# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| NICHOLAS DUDLEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TAVISTOCK RESTAURANTS UPSCALE GROUP HOLDINGS, INC.,<br><br>Defendant. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL**<br><br>**DEMANDED** |

Plaintiff, Nicholas Dudley ("Plaintiff"), through his attorneys, brings this Class Action Complaint against the Defendant, Tavistock Restaurants Upscale Group, Inc. ("Tavistock" or "Defendant"), alleging as follows:

## INTRODUCTION

1.     Tavistock dba Tavistock Restaurant Collection owns high-end dining establishments in Florida, Georgia, Massachusetts and Nevada.

2.     On or about April 6, 2022, Tavistock learned that highly sensitive personal data of approximately 2000 employees stored in Tavistock's computer system was compromised in a data breach by cybercriminals ("Data Breach").

3.     It is unclear how long the Data Breach carried on undetected.

4.     Tavistock's investigations revealed that hackers gained unauthorized access to employees' confidential personal identifying information, including Social Security numbers ("PII").

5.     After Tavistock's "investigation" inexplicably dragged on for nearly six months, Defendant finally disclosed the Data Breach to impacted employees on or around September 29, 2022 (the "Breach Notice").

6.     When Tavistock announced the Data Breach, it provided scant detail about the breach itself and vague information about what Tavistock was doing in response beyond implementing "additional security measures to further fortify its network's security measures and protocols." A true and correct copy of the Breach Notice is attached hereto as Exhibit A.[1]

7.     Defendant's failure to timely detect and report the Data Breach made consumers vulnerable to identify theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

8.     Defendant's failure to protect its employees' PII and adequately warn them about the Data Breach violates Florida law, harming thousands of current and former Tavistock employees.

9.     Defendant knew or should have known that each victim of the Data

---

[1] Breach Notice obtained from the website of the office of the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/616df96c-1248-42b8-bec2-c529d9647f73.shtml (last visited October 28, 2022),

Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

10.   Defendant's misconduct has injured the Plaintiff and members of the proposed Class in a number of ways, including: (i) the lost or diminished value of their PII; (ii) costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and other unauthorized use of their data; (iii) lost opportunity costs to mitigate the Data Breach's consequences, including lost time; and (iv) emotional distress associated with the loss of control over their highly sensitive PII.

11.   Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their PII. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

12.   Plaintiff and members of the proposed Class therefore bring this lawsuit seeking damages and relief for Defendant's actions.

**PARTIES**

13.   Plaintiff Nicholas Dudley is a resident and citizen of Orlando, Florida. Mr. Dudley intends to remain domiciled in Orlando, Florida indefinitely and maintains his true, fixed, and permanent home in that state.

14.   Tavistock is a Florida limited liability company registered to do

business in the state of Florida with its principal place of business located at 6900 Tavistock Lakes Blvd #230, Orlando, FL 32927.

## JURISDICTION & VENUE

15.     This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy exceeds $5 million, exclusive of costs and interest, there are more than 100 members in the proposed class, and at least one class member is a citizen of a different state than Tavistock, establishing minimal diversity.

16.     This Court has personal jurisdiction over Tavistock because it conducts business in Florida and its headquarters are in Orlando, Florida.

17.     Venue is proper in this Court under 28 U.S.C. §§ 1391 because a substantial part of the alleged wrongful conduct and events giving rise to the claims occurred in this District and because Tavistock conducts business in this District.

## FACTUAL ALLEGATIONS

### A.     Tavistock Fails to Safeguard Employees' PII

18.     Tavistock owns and operates upscale restaurants in Florida, Georgia, Massachusetts and Nevada and has employees working at those restaurant locations.

19.     Upon information and belief, Tavistock is owned by Tavistock Group, an international private investment family office with investments in real estate, hotels, restaurants, sports, energy, retail, biotechnology, agriculture and finance.

20.    To obtain employment with Tavistock, Tavistock requires that employees provide their PII.

21.    Tavistock maintains records of its employees' information, including full name and Social Security numbers. This PII is stored on Tavistock's computer systems.

22.    When Tavistock collects this sensitive information, it promises to use reasonable measures to safeguard the PII from theft or misuse.

23.    Despite its alleged commitments to securing sensitive employee data, Defendant does not follow industry standard practices in securing employees' PII.

24.    In April 2022, hackers bypassed Defendant's security safeguards and infiltrated its systems, giving them access to employee PII.

25.    In response to the Data Breach, Defendant contends that it has "implemented additional security measures to further fortify its network's security measures and protocols, including enhancing administrative and technical safeguards and instituting more frequent and rigorous security training." Exh. A. These measures should have been in place *before* the Data Breach.

26.    Tavistock's Breach Notice also omits the size and scope of the breach.

27.    On information and belief, the Data Breach has impacted the PII of approximately 2,000 Tavistock current and former employees.

28.    On information and belief, Defendant does not adequately train its

employees on cybersecurity policies, enforce those policies, or maintain reasonable security practices and systems.

29.     Defendant's negligent conduct caused the Data Breach. Tavistock violated its obligation to implement best practices and comply with industry standards concerning computer system security. Tavistock failed to comply with security standards and allowed its employees' PII to be accessed and stolen by failing to implement security measures that could have prevented, mitigated, or timely detected the Data Breach.

30.     Tavistock ultimately admitted to the Data Breach on or about September 29, 2022—nearly six months after discovering the breach. Defendant has failed to justify the delays in notifying breach victims.

31.     Defendant encouraged Data Breach victims to " be on the alert for suspicious activity related to your financial accounts and credit reports." Exh. A.

32.     On information and belief, Defendant has offered breach victims only 18 months of complimentary identity monitoring services through Kroll.

33.     As more fully articulated below, Plaintiff's and the members of the proposed Class's personal data may exist on the dark web and in the public domain for months, or even years, before it is used for ill gains and actions. With only 18 months of monitoring, and no form of insurance or other protection, Plaintiff and members of the proposed Class remain unprotected from the real and long-term

threats against their personal, sensitive, and private data.

34.     Therefore, the "protection" services offered by Defendant are inadequate, and Plaintiff and the members of the proposed Class have a real and cognizable interest in obtaining equitable relief, in addition to the monetary relief requested herein.

**B.     Plaintiff's experience**

35.     Mr. Dudley is a former employee of Tavistock where he worked as the Director of IT between 2015 and 2020.

36.     As a condition of his employment, Mr. Dudley had to provide Tavistock with his PII.

37.     Mr. Dudley believed that Tavistock would utilize reasonable data security measures to protect his PII.

38.     On or about October 1, 2022, Mr. Dudley received notice from Defendant that his PII was compromised by the Data Breach.

39.     In response, Mr. Dudley has spent considerable time and effort monitoring his accounts to protect himself from additional identity theft. Mr. Dudley fears for his personal financial security and uncertainty over what medical information was revealed in the Data Breach. He is experiencing feelings of anxiety, sleep disruption, stress, and fear because of the Data Breach. This goes far beyond

allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

40.     Mr. Dudley suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

41.     Mr. Dudley has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties and possibly criminals.

42.     Defendant's proposed fix, a credit monitoring service, is inadequate to address Mr. Dudley's losses, as he faces a risk of identity theft for the rest of his life.

43.     Had Mr. Dudley known that Defendant does not adequately protect PII, he would not have entrusted it to Defendant.  Furthermore, Plaintiff's sensitive PII remains in Defendant's possession without adequate protection against known threats, exposing Mr. Dudley to the prospect of additional harm in the event Defendant suffers another data breach.

**C.     Mr. Dudley and the proposed class face significant risk of identity theft**

44.     Mr. Dudley and members of the proposed class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

45.     The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, or other information, without permission, to commit fraud or other crimes.

46.     According to experts, one out of four data breach notification recipients become a victim of identity fraud.

47.     Because Defendant failed to prevent the Data Breach, Mr. Dudley and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.      The loss of the opportunity to control how their PII is used;

b.      The diminution in value of their PII;

c.      The compromise and continuing publication of their PII;

d.      Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.      Lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts

spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.    Delay in receipt of tax refund monies;

g.    Unauthorized use of stolen PII; and

h.    The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

48.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals often post stolen private information openly on various "dark web" internet websites, like Marketo, making the information publicly available, for a fee.

49.    It can take victims years to spot identity or PII theft, giving criminals time to sell that information for cash.

50.    One such example of criminals using PII for profit is the development of "Fullz" packages.

51.    Cybercriminals can cross-reference multiple sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

52.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cybercriminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other members of the proposed Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

53.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, leading to more than $3.5 billion in losses to individuals and business victims.

54.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."

55.     Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

56.     Along with out-of-pocket expenses that can exceed thousands of dollars for the victim of new account identity theft, and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continually monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

57.     Further complicating the issues faced by victims of identity theft, data thieves may wait years before trying to use the stolen PII. To protect themselves, Plaintiff and the proposed Class will need to remain vigilant against unauthorized data use for years or even decades to come.

58.     The Federal Trade Commission ("FTC") has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner, Pamela Jones Harbour, stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."

59.     The FTC has also issued several guidelines for businesses that highlight reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making. According to the FTC, data security requires: (1) encrypting information stored on computer networks; (2) retaining payment card information only as long as necessary; (3) properly disposing of personal information that is no longer needed; (4) limiting administrative access to business systems; (5) using industry-tested and accepted methods for securing data; (6) monitoring activity on networks to uncover unapproved activity; (7) verifying that privacy and security features function properly; (8) testing for common vulnerabilities; and (9) updating and patching third-party software.

60.     According to the FTC, unauthorized PII disclosures are extremely damaging to consumers' finances, credit history, and reputation, and can take time, money, and patience to resolve the fallout. The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

61.     To that end, the FTC has issued orders against businesses that failed to employ reasonable measures to secure sensitive payment card data. *See In the matter of Lookout Services, Inc.*, No. C-4326, ⁋ 7 (June 15, 2011) ("[Defendant] allowed users to bypass authentication procedures" and "failed to employ sufficient measures

to detect and prevent unauthorized access to computer networks, such as employing an intrusion detection system and monitoring system logs."); *In the matter of DSW, Inc.*, No. C-4157, ⁋ 7 (Mar. 7, 2006) ("[Defendant] failed to employ sufficient measures to detect unauthorized access."); *In the matter of The TJX Cos., Inc.*, No. C-4227 (Jul. 29, 2008) ("[R]espondent stored . . . personal information obtained to verify checks and process unrecepted returns in clear text on its in-store and corporate networks[,]" "did not require network administrators . . . to use different passwords to access different programs, computers, and networks[,]" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks . . ."); *In the matter of Dave & Buster's Inc.*, No. C-4291 (May 20, 2010) ("[Defendant] failed to monitor and filter outbound traffic from its networks to identify and block export of sensitive personal information without authorization" and "failed to use readily available security measures to limit access between instore networks . . ."). These orders, which all preceded the Data Breach, further clarify the measures businesses must take to meet their data security obligations.

### D. Defendant Failed to Adhere to FTC Guidelines

62.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that

businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

63.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

    a. protect the personal customer information that they keep;

    b. properly dispose of personal information that is no longer needed;

    c. encrypt information stored on computer networks;

    d. understand their network's vulnerabilities; and

    e. implement policies to correct security problems.

64.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

65.    The FTC recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

66.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

67.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

## CLASS ACTION ALLEGATIONS

68.     Mr. Dudley sues on behalf of himself and the proposed class ("Class") under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), defined as follows:

> All individuals residing in the United States whose personal information was compromised in the Data Breach disclosed by Tavistock in April 2022.

Excluded from the Class are Tavistock, its agents, affiliates, parents, subsidiaries, any entity in which Tavistock has a controlling interest, any Tavistock officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

69.     Mr. Dudley reserves the right to amend the class definition.

70.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a.      **Numerosity**. Mr. Dudley is a representative of the proposed Class consisting of thousands of members—far too many to join in a single action;

b.      **Ascertainability**. Class members are readily identifiable from information in Tavistock's possession, custody, and control;

c.      **Typicality**. Mr. Dudley's claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged negligence and statutory violations by , and Tavistock the same unreasonable manner of notifying individuals about the Data Breach.

d.      **Adequacy**. Mr. Dudley will fairly and adequately protect the proposed Class's interests. His interests do not conflict with Class members' interests, and he has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e.      **Commonality**. Mr. Dudley's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

i.  Whether Defendant had a duty to use reasonable care in safeguarding Mr. Dudley and the Class's PII;

ii.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii.  Whether Defendant was negligent in maintaining, protecting, and securing PII;

iv.  Whether Defendant breached contractual promises to safeguard Mr. Dudley's and the Class's PII;

v.  Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi.  Whether Defendant's Breach Notice was reasonable;

vii.  Whether the Data Breach caused Mr. Dudley and the Class injuries;

viii.  What the proper damages measure is;

ix.  Whether Defendant violated the statutes alleged in this complaint; and

x.  Whether Mr. Dudley and the Class are entitled to damages, treble damages, or injunctive relief.

71.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

## FIRST CLAIM FOR RELIEF
### Negligence
### (On Behalf of Plaintiff and the Class)

72.    Plaintiff incorporates the allegations in paragraphs 1-71 herein.

73.    Plaintiff and members of the Class entrusted their PII to Defendant. Defendant owed to Plaintiff and other members of the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that happened, and to promptly detect attempts at unauthorized access.

74.    Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards for data security would result in the compromise of that PII—just like the Data Breach that ultimately happened. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and members of the Class's PII by disclosing and

providing access to this information to third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who made that happen.

75.    Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable time frame of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the Class to respond appropriately to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

76.    Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and members of the Class's PII for employment purposes. Plaintiff and members of the Class needed to provide their PII to Defendant as a condition of employment, and Defendant retained that information.

77.    The risk that unauthorized persons would try to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it

was inevitable that unauthorized individuals would try to access Defendant's databases containing the PII—whether by malware or otherwise.

78.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and members of the Class's and the importance of exercising reasonable care in handling it.

79.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and members of the Class which actually and proximately caused the Data Breach and Plaintiff's and members of the Class's injury.

80.    Defendant also breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact.

81.    As a direct and traceable result of Defendant's negligence or negligent supervision, Plaintiff, and members of the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

82.     Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff's and members of the Class's actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CLAIM FOR RELIEF
### Negligence *Per Se*
### (On Behalf of Plaintiff and the Class)

83.     Plaintiff incorporates the allegations in paragraphs 1-82 herein.

84.     Defendant had a duty to protect and maintain and provide adequate data security to maintain Plaintiff's and the Class's PII under § 5 of the FTC Act, 15 U.S.C. § 45.

85.     The FTC Act prohibits unfair business practices affecting commerce, which the FTC has interpreted to include a failure to use reasonable measures to safeguard PII.

86.     Defendant's violation of these duties is negligence *per se* under Florida law.

87.     Plaintiff and the proposed Class are included in the class of persons that

the FTC Act was intended to protect.

88.     The harm the Data Breach caused is the type the FTC Act was intended to guard against.

89.     Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence per se.

90.     Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

91.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

92.     The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

93.     Had Plaintiff and members of the Class known that Defendant did not adequately protect their PII, Plaintiff and members of the Class would not have entrusted Defendant with their PII.

94.     Defendant's negligence *per se* caused Plaintiff and the proposed Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft

of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**THIRD CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

95.    Plaintiff incorporates the allegations in paragraphs 1-94 herein.

96.    Defendant offered employment to Plaintiff and members of the Class and received a benefit from the services they provided.

97.    Defendant required Plaintiff and the members of the Class to provide Defendant with their PII as a condition of employment.

98.    In turn, Defendant impliedly promised to maintain safeguards to protect employees' PII.

99.    Plaintiff and the members of the Class accepted Defendant's offer by providing PII to Defendant in exchange for receiving employment and providing services to Defendant.

100.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access or theft of their PII.

101.   Plaintiff and the members of the Class would not have entrusted their PII to Defendant without such agreement with Defendant.

102.   Defendant materially breached the contract(s) it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the Class by:

a.      Failing to properly safeguard and protect Plaintiff's and members of the Class's PII; and

b.      Violating industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement;

103.   The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

104.   Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

105.   The covenant of good faith and fair dealing is an element of every contract. All such contracts impose on each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions

concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract along with its form.

106.   Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

107.   Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

108.   In these and other ways, Defendant violated its duty of good faith and fair dealing.

109.   Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

110.   Plaintiff incorporates the allegations in paragraphs 1-109 herein..

111.   This claim is pleaded in the alternative to the breach of implied contractual duty claim.

112.   Plaintiff and members of the Class conferred a monetary benefit upon Defendant in the form of monies paid for treatment services.

113.   Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class. Defendant also benefited from the receipt of Plaintiff's and members of the Class's PII, as this was used to facilitate payment and treatment services.

114.   As a result of Defendant's conduct, Plaintiff and members of the Class suffered actual damages in an amount equal to the difference in value between service costs with reasonable data privacy and security practices and procedures that Plaintiff and members of the Class believed they were receiving as employees and the lower costs associated with services where unreasonable data privacy and security practices and procedures are used.

115.   Under principals of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and members of the Class because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures for itself that Plaintiff and members of the Class should have received in exchange for employee services they provided and that were otherwise mandated by federal, state, and local laws and industry standards.

116.   Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged herein.

## PRAYER FOR RELIEF

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.   Certifying this case as a class action on behalf of Mr. Dudley and the proposed Class, appointing Mr. Dudley as class representative, and appointing his counsel to represent the Class;

B.   Awarding declaratory and other equitable relief as is necessary to protect the interests of Mr. Dudley and the Class;

C.   Awarding injunctive relief as is necessary to protect the interests of Mr. Dudley and the Class;

D.   Enjoining Defendant from further deceptive and unfair practices and making untrue statements about the Data Breach and the stolen PII;

E.   Awarding Mr. Dudley and the Class damages that include compensatory, exemplary, punitive damages, and statutory damages, including pre- and post-judgment interest, in an amount to be proven at trial;

F.     Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.     Awarding attorneys' fees and costs, as allowed by law;

H.     Awarding prejudgment and post-judgment interest, as provided by law;

I.     Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.     Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 15th day of November, 2022.

/s/Avi R. Kaufman
Avi R. Kaufman (Florida Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (Florida Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

Raina Borrelli*
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
T: (608) 237-1775
F: (608) 509-4423
brittanyr@turkestrauss.com

*Attorney for Plaintiff and the Putative Class*